IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES PIAZZA, JR.,
et al.,

    PLAINTIFFS,

v.                                     CASE NO.: CV-97-J-1823-S

EBSCO INDUSTRIES, et al.,

    DEFENDANTS.

**MEMORANDUM OPINION**

Currently pending before the court is the defendant AmSouth Bank's ("AmSouth") motion for summary judgment (doc. 93) and a memorandum in support of said motion. The plaintiff filed a response in opposition to the motion (doc. 96) and the defendant thereafter entered a reply to the same. The court has considered the motion, the arguments of the parties and the law cited by both parties.

### I. FACTUAL BACKGROUND

The plaintiff originally filed this action in 1997, but failed to name AmSouth as a defendant until February 18, 1999, when the plaintiff filed an amended complaint. *See* Amended Complaint (doc. 49). Due to a further amendment to the complaint, the sole allegation remaining against AmSouth is breach of fiduciary duty under ERISA. June 30, 1999 Amended Complaint, The basis for plaintiff's complaint concerns the sale of EBSCO stock out of the EBSCO Savings and Profit Sharing Program (the "Plan") at values which the plaintiff alleges, on behalf of a class, were too low. The plaintiff alleged in its motion to amend complaint that AmSouth was the trustee of the Plan at all times relevant to this litigation and that AmSouth was the entity which hired defendant PriceWaterhouse Coopers

to perform the valuation of the stock which was sold from the plan. Plaintiff's motion for leave of court to amend the complaint (doc. 37).

In the light most favorable to the plaintiff, the court finds the facts of this case to be as follows:

The plaintiff learned in November or December 1995 that the EBSCO stock that had at one time been part of the Plan had been sold by EBSCO in 1994. Plaintiff's memorandum in opposition to defendant's motion ("plaintiff's opposition") at 2. He was told by an ex-employee of EBSCO's that EBSCO has persuaded AmSouth to reduce the value of the stock at sometime in the past. *Id.* June 30, 1999 Amended Complaint at ¶¶ 5-7. Further, at the same point in time, the plaintiff hired an attorney to represent him. Plaintiff's opposition at 2. The plaintiff alleges that AmSouth knew or should have known that the PriceWaterhouse Coopers' valuation was too low and further that AmSouth had undervalued the stock at times before the 1994 stock valuation and sale.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any

> material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 47 U.S. at 251-252.

### IV. LEGAL ANALYSIS

The sole issue raised by the defendant AmSouth in its motion for summary judgment is whether the plaintiff's claim against it is barred by 29 U.S.C. § 1113 of the Employee Retirement Income Security Act ("ERISA"), which bars claims brought after the earlier of (1) six years from the last action which constituted a part of the breach of fiduciary duty; or (2) three years from the earliest date on which the plaintiff had actual knowledge of the breach. The three year time limit is in the nature of an exception to the six year statute, hence if actual knowledge by the plaintiff is found, that subsection, and not the six year limit, must apply. *Brock v. Nellis,* 809 F.2d 753, 754-755 (11th Cir.1987).

Although the plaintiff is not specific as to any dates, in the light most favorable to the plaintiff, he had knowledge that the stock was sold out of the Plan, that the stock was allegedly sold for less than its worth, and that the defendant AmSouth was the trustee of the the Plan, no later than December 31, 1995. Thus, if this knowledge was sufficient for the plaintiff to have actual knowledge of the breach, then under 29 U.S.C. § 1113(2), the plaintiff

4

had until December 31, 1998 to file his claim against AmSouth. The plaintiff's claim against AmSouth was filed on February 18, 1999 and amended again on February 24, 1999. *See* Amended Complaints (docs. 49 and 50). However, if the knowledge the plaintiff had was not sufficient to be actual knowledge, then under 29 U.S.C. § 1113(1), the plaintiff had six years from the last action which constituted a breach, that being the actual sale of the stock in 1994.

29 U.S.C. § 1113(2) has been held to require actual knowledge that a breach occurred. *Brock v. Nellis*, 809 F.2d 753 (11th Cir. 1987). The Court in *Brock* stated "it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues .... To us, section 1113(a)(2)(A) means only that once the [plaintiff] learns of the facts that support his allegation of illegality, he had no more than three years in which to bring his suit." *Brock*, 809 F.2d at 755. The plaintiff argues that his knowledge in November or December 1995, that the stock was sold from the Plan, is not sufficient to meet the "specific knowledge" requirement of *Brock*.

In his deposition, the plaintiff testified that, in November, 1995, he knew "that all the stock had been sold" and that an ex-employee (John Krontiras) had told him six or seven things he believed EBSCO had done wrong in this transaction, which the plaintiff characterized as "allegations of wrongdoing." June 25, 1999 depo. of plaintiff at 322, 329, 330-331, 338-340. The plaintiff testified that he set out to investigate the allegations of Krontiras, that determine if the EBSCO stock had been undervalued, by the first part of November, 1995. *Id.* at 340. This included allegations that AmSouth had participated in the undervaluation of the stock. *Id.* at 346, 363. The plaintiff also testified that before he met

5

with a lawyer at the end of 1995 or the beginning of 1996, he believed he might have a lawsuit. *Id.* at 346. The plaintiff gave the following testimony:

> Q. I understand that Mr. Krontiras had told you by November of 1995 that AmSouth had acted improperly in connection with some earlier valuation of the stock; would you agree with that?
>
> A. Yes.
>
> Q. Do you have any reason at this point to believe that AmSouth did not act in good faith in connection with the 1994 valuation of the EBSCO stock for purposes of sale to EBSCO?
>
> A. All I can do is look at the results. And what I'm told is that the stock was sold for less than the fair market value.
>
> Q. Okay. And you were told that back by January 1996; isn't that correct?
>
> A. Told what?
>
> Q. That the stock had been sold for less than the fair market value?
>
> A. I had been told that it was thought that it was sold at less than the fair market value.
>
> Q. Have you learned any facts since January 12, 1996 that would cause you to believe that AmSouth did not act in good faith in connection with the 1994 sale of the EBSCO stock by the profit sharing plan?
>
> A. The only fact is that I have an expert opinion that says that it wasn't sold at fair market value.
> ....
> Q. Okay. Do you have any reason to believe that AmSouth was not trying to do its best to be a good trustee for the profit sharing plan in 1994?
>
> A. The results. If the results aren't what you expect it to be, if the results are sold at a lower price, then that's the reason I have to be suspect.

June 25, 1999 depo. of plaintiff at 363-365. He then stated "I've been suspicious that the stock was sold at a price lower than what it should have been since I learned of the sale of

6

the stock." *Id.* at 366. Furthermore, the plaintiff testified that Mr. Krontiras was hired as a consultant before January 12, 1996. *Id.* at 455-458.

Based on the foregoing testimony of the plaintiff, this court finds that, no later than December 31, 1995, the plaintiff knew the stock had been sold out of the Plan, knew that AmSouth was the trustee of the Plan and knew that the stock was alleged to have been sold at less than fair market value. The fact that the plaintiff did not have an expert to tell him the sale price was indeed below fair market value until later is immaterial.[1] This court finds that the statute of limitations at issue here does not require knowledge confirmed by an expert, nor has this court found any case law which interprets 29 U.S.C. § 1113(2) to require such confirmation.

The plaintiff does not allege any circumstances which increased his knowledge of the facts upon which he sues from December 1995 until this claim against AmSouth was filed in February, 1999. If the plaintiff's knowledge was sufficient in February, 1999, it was sufficient in January, 1996. Clearly, when the plaintiff filed the other allegations in this suit in 1997, he knew that AmSouth was the trustee of the Plan, that the stock had been sold out of the Plan, and that the stock was undervalued. This is all the information plaintiff need to proceed against AmSouth. By his own testimony, he had this knowledge no later than January, 1996.

---

[1] Under the plaintiff's theory that the three year statute of limitations did not begin to run until the plaintiff's suspicions were confirmed by an expert effectively terminates any statute of limitations based on actual knowledge. The plaintiff could wait years to hire an expert, and each time claim that until the expert confirmed "suspicions", the statute of limitations did not begin to run.

7

This court finds the facts of this case akin to *Scott v. Evins*, 802 F.Supp. 411 (N.D.Ala. 1992), *aff'd* 998 F.2d 1022 (11th Cir. 1993), where the court adopted the language of *Blanton v. Anzalone*, 760 F.2d 989, 991-92 (9th Cir.1985), stating that the ERISA statute of limitations, 29 U.S.C. § 1113(2), bars an action for violation of Section 406 "three years after the plaintiff has actual knowledge of the facts, not knowledge of the violation of the law." *See also Martin v. Consultants & Adm's, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) ("to have actual knowledge of a violation to trigger ERISA's three year statute of limitations, a plaintiff must know of the essential facts of the transaction or conduct constituting the violation"). Here, the plaintiff had actual knowledge of all the facts essential to determining whether AmSouth had likely breached its fiduciary duty no later than December 31, 1995.

## V. CONCLUSION

Based on consideration of the foregoing, this court finds that under 29 U.S.C. § 1113(2), the plaintiff's time to file this action against AmSouth ended no later than December 31, 1998. The Amended Complaints filed February 18, 1999 and February 24, 1999 were untimely. As such, this court is of the opinion that AmSouth's motion for summary judgment is due to be granted and accordingly shall grant the same by separate order.

**DONE** and **ORDERED** this the ___8___ day of February, 2000.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON